**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-13-0002023**
**14-MAY-2014**
**08:00 AM**

NO. CAAP-13-002023

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

GENOA KUUIPO MEDEIROS, Plaintiff-Appellee, v.
KEVIN FRANCIS MEDEIROS, Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 11-1-6577)

MEMORANDUM OPINION
(By: Foley, Presiding J., Fujise and Leonard, JJ.)

Defendant-Appellant Kevin Francis Medeiros (**Kevin**) appeals from the June 17, 2013 "Order Denying Post-Decree Relief filed March 12, 2013" (**Order Denying Motion**) entered in the Family Court of the First Circuit[1] (**family court**).

On appeal, Kevin[2] contends the family court erred by:

(1) receiving Plaintiff-Appellee Genoa Kuuipo Medeiros's (**Genoa**) Exhibits "1" through "14" into evidence over his objections;

(2) refusing to allow him to present oral testimonies and requiring offers of proof;

(3) refusing to allow him to present evidence from a medical doctor regarding Genoa's alleged failure to provide

---

[1] The Honorable Frances Q.F. Wong presided unless otherwise noted.

[2] Kevin's opening brief does not comply with Hawai'i Rules of Appellate Procedure Rule 28(b)(7). The majority of the "Argument" section of his opening brief failed to support contentions with record references or citations to legal authorities. Kevin's counsel is warned that future noncompliance with this rule may result in sanctions.

medical care for one of the parties' children;

      (4) finding he had not shown a prima facie case for a material change in circumstances regarding custody of the parties' children;

      (5) ruling on his motion before allowing and considering all evidence that was to be moved into evidence;

      (6) receiving evidence before the hearing commenced and before moving it into evidence; and

      (7) allowing Genoa to cross-examine him regarding her offer of proof and not affording him the opportunity to cross-examine Genoa.

## I.  BACKGROUND

      On April 13, 2011, Genoa filed a complaint for divorce. The parties had three minor children (collectively, **children**).

      On January 18, 2013, the family court entered a divorce decree that: (1) dissolved the marriage between Kevin and Genoa; (2) awarded the parties joint physical custody of the children; (3) awarded sole legal custody of the children to Genoa; (4) awarded child support payments of $12 per month from Genoa to Kevin; and (5) divided and distributed the parties' assets, property, and debts.[3] The divorce decree provided that Kevin was to have the children from Monday afternoon until Friday morning while school was in session.

      On March 12, 2013, Kevin filed a "Motion And Declaration For Post-Decree Relief," (**Motion for Post-Decree Relief**) requesting sole legal and physical custody of the children. Kevin alleged that Genoa "did not provide medical care for the daughter which put the child at risk of causing permanent damage to the minor child's hearing and "failed to pay her share of the school expense."

      On June 17, 2013, the family court held a hearing on Kevin's Motion for Post-Decree Relief. In response to the family court's request that the parties agree that Genoa's exhibits would be received subject to cross-examination, Kevin's counsel, Scot Brower (**Brower**) asserted that a lot of Genoa's exhibits were

---

[3]      The Honorable Judge Catherine H. Remigio presided.

cumulative, unauthenticated, and hearsay. The family court responded with, "actually the court has received the face sheet of this exhibit list, and everything that has been proffered by [Genoa] is either a filed court document or a statement by [Genoa] . . . ."

When Brower indicated he would call Kevin to testify, the family court stated it first required an offer of proof. Brower stated Kevin would testify that on October 13, 2012, Genoa took one of the children to a pediatrician who prescribed a medication, and that Genoa did not inform Kevin of the child's medical condition or provide the medication to Kevin when he received the child for her regular visit with him. Kevin also would testify to being contacted by the children's school and teacher numerous times "with regard to the children not being properly prepared for school after visitation with [Genoa] . . . ." The family court interjected: "[t]his is an offer of proof just with respect to your client, and this is about material change in circumstance. So don't - you needn't argue the case because there's no . . . rule that allows you to argue the case at this juncture anyway."

Genoa, proceeding pro se, testified the medication in question was the child's ear drops, which were used to clear mucous from the child's ears. In light of the temporary restraining order (**TRO**) against Kevin, Genoa left the medication with his mother, a third party. Genoa testified that "I text[ed] him, you know, your mom has the medication. And so he just went and said I didn't give him the medication." Genoa further testified that the child's ear infections were not caused by a lack of medical attention, but because of the way her ear is physically formed. Genoa also stated:

> So, my daughter's ear infections are not physically caused because I don't give her medication which I do. I have all the documents showing that I take her to doctors, I always get the medication for her. Um, it's just that one time I didn't give him the drops because I asked the doctor for extra drops so that they could have - he could have one, his mom could have one, and we have our set so we don't have to keep switching the drops and taking it off - taking it to school and whatnot.

After Genoa's testimony, the family court indicated that it would follow an "important rule" that "previous orders do

3

not even get looked at unless there's a finding of material change in circumstance. No. The court does not find that. The [Motion for Post-Decree Relief] is denied."

The family court asked Genoa to prepare a handwritten order that Kevin's Motion for Post-Decree Relief would be denied for failure to show a material change in circumstance. Brower then asked to "make a record for the purposes of appeal" and proceeded to argue that the family court erred by refusing to admit Kevin's Exhibits "A" and "B" into evidence. The following colloquy occurred:

> THE COURT: I didn't -- whoa. I didn't refuse to allow it. I just forgot to get to it.
>
> [Brower]: Well, then I don't know how the court could make a ruling if -- because we were going to put these into evidence and --
>
> THE COURT: I received them.
>
> [Brower]: Yeah. So everything is received except C and D; is that correct?
>
> THE COURT: No. I received A and B. And by the way I read A and B --
>
> [Brower]: All right.
>
> THE COURT: -- already.
>
> [Brower]: And –
>
> THE COURT: C and D is in and read.
>
> [Brower]: Okay.
>
> THE COURT: You want to speak to E?
>
> [Brower]: E is the photographs of the minor showing the injuries she sustained at the hands of [Genoa]. We think that that's material to the case.
>
> THE COURT: Well, um, your, uh -- it's material. The problem is that there was a failure of proof about that after I listened to both your offer of the testimony of your client and, um, the, uh, defendants testimony -- yes, defendant's testimony. The court will receive it –
>
> [Brower]: Well, Your Honor –
>
> THE COURT: -- E and F.
>
> [Brower]: -- you didn't give me an opportunity to examine my client –
>
> THE COURT: And I read it.
>
> [Brower]: -- as a witness which I wanted to do. I wanted to ask questions of my client and I was going to lay a foundation with regard to the photographs.

THE COURT: I received D and F.

[Brower]: All right.  E - F is received.

THE COURT: E is received. F is received. And --

The family court also received Kevin's Exhibits G, H, and I.  The family court then reiterated that Kevin's Motion for Post-Decree Relief was dismissed.

On June 17, 2013, the family court entered the Order Denying Motion denying Kevin's Motion for Post-Decree Relief "due to no material change in circumstance found."

On July 16, 2013, Kevin filed a notice of appeal from the family court's Order Denying Motion.

On July 17, 2013, Genoa and Kevin filed their respective exhibit lists.  Genoa's exhibits consisted of the following:

1.  medical records for the children's visits with Jason Ninomiya M.D. (**Dr. Ninomiya**) for 2008-2013;

2.  Custody Investigation Report dated September 13, 2011;

3.  an "Amended Extended Order for Protection" expiring on September 27, 2014;

4.  a letter from the Department of the Prosecuting Attorney, City and County of Honolulu, indicating Kevin violated the TRO on March 22, 2011;

5.  an "Order for Protection," which expired on October 1, 2011;

6.  a "Petition for an Order for Protection on Behalf of a Family or Household Member," filed by Genoa on November 2, 2012;

7.  a letter dated August 8, 2011 from Cheryl Y. Yamaki (**Yamaki**), Staff Attorney for the Domestic Violence Action Center (**DVAC**), to Brower indicating Kevin had faxed the Complaint for Divorce to the children's school and stated the document gave him full custody of the children;

8.  a letter dated June 21, 2011 from Yamaki to Brower, indicating Kevin called DVAC's helpline twice and stated DVAC was "helping the wrong person";

9.  letters from two of her children;

10. her paystubs;

11. her 2012 Individual Income Tax Return; and

12. her 2012 Wage and Tax Statement.

Kevin's exhibits consisted of the following:

A. Dr. Ninomiya's declaration including a November 2, 2012 report from his medical examination of the child to "recheck ears";

B. Wilson T. Murakami, M.D.'s declaration indicating he had examined the child on October 27, 2012;

C. Genoa's November 2, 2012 "Petition For An Order For Protection On Behalf Of A Family Or Household Member;"(id. at 838);

D. the family court's "Order Dissolving the [TRO] Filed on November 2, 2012," (**Order Dissolving TRO**)

E. a photograph of one of the children with a bruised arm;

F. a Honolulu Police Department Incident Report, for an incident that occurred on December 7, 2012;

G. a summary of educational expenses paid by Kevin;

H. receipts from educational expenses paid by Kevin; and

I. a mobile phone screenshot of text messages from Genoa to Kevin, dated June 12 and 13, 2013.

## II. DISCUSSION

Kevin's March 12, 2013 "Motion For Declaration For Post-Decree Relief" was apparently made pursuant to Hawaii Revised Statutes (**HRS**) § 571-46(a)(6) (Supp. 2013). He used a family court post-decree motion-form, part A of which required the movant to identify ways "the circumstances of the subject child(ren) have changed since the last custody order . . . [.]" In relevant part, HRS § 571-46 provides:

> §571-46 "Criteria and procedure in awarding custody and visitation; best interest of the child. (a) In actions for divorce, separation, annulment, separate maintenance, or any other proceeding where there is at issue a dispute as to the custody of a minor child, the court, during the pendency of the action, at the final hearing, or any time during the minority of the child, may make an order for the custody of the minor child as may seem necessary or proper. In awarding the custody, the court shall be guided by the following standards, considerations, and procedures:

. . . .

> (6) <u>Any custody award shall be subject to modification or change whenever the best interests of the child require or justify the modification or change</u> and, wherever practicable, the same person who made the original order shall hear the motion or petition for modification of the prior award[.]

(Emphasis added.)

For a motion to modify custody to prevail, the movant "must show a material change of circumstances since the previous custody order, and must show that such a change of custody is in the best interest of the child." <u>Nadeau v. Nadeau</u>, 10 Haw. App. 111, 121, 861 P.2d 754, 759 (1993), citing HRS § 571-46; <u>see</u> <u>also</u> <u>Turoff v. Turoff</u>, 56 Haw. 51, 55-56, 527 P.2d 1275, 1278 (1974) ("[T]he question is whether substantial change has occurred since the initial Decision and Order requiring modification or change in the award of custody of the minor child.").

Kevin's first, second, third, fifth, sixth, and seventh contentions of error concern the family court's evidentiary rulings at the June 17, 2013 hearing. "The family court has broad discretion to determine appropriate evidence for trial, and this court reviews such rulings under the abuse of discretion standard." <u>Baker v. Bielski</u>, 124 Hawaiʻi 455, 458, 248 P.3d 221, 224 (App. 2011), citing <u>Miyamoto v. Lum</u>, 104 Hawaiʻi 1, 7, 84 P.3d 509, 515 (2004) (the lower court's grant or denial of a motion in limine is reviewed for abuse of discretion).

> Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

<u>Fisher v. Fisher</u>, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006).

"Furthermore, the burden of establishing abuse of discretion is on appellant, and a strong showing is required to establish it." <u>Ek v. Boggs</u>, 102 Hawaiʻi 289, 294-95, 75 P.3d 1180, 1185-86 (2003) (internal quotation marks, citation, and brackets omitted).

Kevin's first contention is that the family court abused its discretion by receiving Genoa's Exhibits "1" through "14" into evidence. "An appellate court will not reverse a

judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made." Associated Eng'rs & Contractors, Inc. v. State, 58 Haw. 187, 213, 567 P.2d 397, 414 (1977) (internal quotation marks and citation omitted). "[A]n error in admission of evidence is not reversible unless the appellant is able to show that the alleged inadmissible evidence influenced the decision of the trial judge and the decision therein was insupportable by other evidence." Lennen & Newell, Inc. v. Clark Enterprises, Inc., 51 Haw. 233, 238, 456 P.2d 231, 235 (1969) (rejecting appellant's objection to twelve exhibits, made on grounds of hearsay, immateriality and irrelevancy, and improper foundation, due to appellant's failure to show prejudicial error).

Kevin alleges that Genoa's exhibits were cumulative, unauthenticated, and inadmissible hearsay, but he does not show how their admission resulted in prejudicial error. Kevin does not indicate how the allegedly incompetent evidence induced the family court to make an essential finding it would not otherwise have made.

Kevin's sixth contention that the family court abused its discretion by receiving evidence before the hearing commenced lacks merit. Kevin contends, without citing to the record, that the family court "claimed it had read evidence, that had not been admitted into evidence, presumably before the hearing commenced, and outside the presence of the parties. The lower court was wrong to have reviewed evidence before the evidence was admitted." Presumably, Kevin is referring to the family court's statement: "actually the court has received the face sheet of [Genoa's] exhibit list, and everything that has been proffered by [Genoa] is either a filed court document or a statement by [Genoa] . . . ." Kevin indicates no authority for the proposition that the family court abused its discretion by reviewing the face sheet of Genoa's exhibit list. The family court indicated that it had "already" read Kevin's Exhibits A and

8

B, but Kevin does not explain how the family court committed reversible error by doing so, nor does he cite to this instance in support of his contention.

Kevin's second, third, and fifth contentions concern the family court's refusal to allow Kevin to present oral testimonies and evidence from the children's doctors, and ruling on Kevin's motion before considering his evidence. "The trial court is afforded broad discretion in determining the order and mode of interrogating witnesses and presenting evidence." State v. Maddox, 116 Hawai'i 445, 458, 173 P.3d 592, 605 (App. 2007), citing Hawaii Rules of Evidence (**HRE**) Rule 611(a) (1993).[4]

Kevin contends his proffered evidence and testimony regarding Genoa's alleged failure to provide the child medication showed facts that "cry out for the lower court to protect the child, and change [Genoa's] legal and physical custodial rights." He contends his evidence showed, "[t]he doctor memorialized that he had a conversation with [Genoa], in which the doctor confirmed [Genoa] never gave [Kevin] medications[.]" Kevin's Exhibits A and B, consist of declarations and medical reports from the children's doctors. Exhibit A shows that on November 1, 2012, Dr. Ninomiya spoke with Kevin saying that he was required to add to a Child Protective Services (**CPS**) report being prepared by Kevin's attorney. Dr. Ninomiya wrote, "I told dad that I would like to hear mom's side of the story before talking with CPS, if that was OK with him . . . ." On November 2, 2012, Dr. Ninomiya wrote: "I called CPS to add on to the lawyers report. I told the social worker about my conversation with [Genoa] and that she confirmed that she did not give [Kevin] any medications to administer to [the minor child] while [she] was with him between 10/15-10/19. I also conveyed her reasoning for this decision."

---

[4]     HRE Rule 611 provides in relevant part:

> **Rule 611  Mode and order of interrogation and presentation.** (a) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

On its face, Dr. Ninomiya's report is not inconsistent with Genoa's testimony that she did not give the medication to Kevin for reasons relating to the parties' TRO, and we cannot weigh Genoa's credibility. See Inoue v. Inoue, 118 Hawai'i 86, 101, 185 P.3d 834, 849 (App. 2008) ("[I]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence[.]"). Furthermore, any inconsistency would not establish that the family court's alleged failure to properly consider Kevin's evidence affected his substantial rights or caused a substantial detriment to Kevin's case for a modification of custody because it would not show a material change of circumstances. See HRE Rule 103(a) (1993) ("Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]").

The family court's alleged failure to properly consider Kevin's Exhibit D, the Order Dissolving TRO, also does not constitute reversible error. Kevin alleges Genoa filed a TRO in retaliation against him, and that it contained false information. Genoa alleged that Kevin neglected the children's medical care. Genoa testified that she has filed numerous protective orders against Kevin because he "physically, mentally, and verbally abused me since 2002, and he's doing it to my children now that I'm not there to physically protect them from him." The family court heard Genoa's testimony on the reasons why she filed for the TRO. Exhibit D did not show a material change in circumstances or demonstrate reasons why Genoa filed for a TRO.

Kevin's fourth contention is that the family court erred by finding Kevin "had not shown a prima facie case for a material change in circumstances regarding legal and/or physical custody" of the children. Brower's offer of proof was that Kevin's testimony would show Genoa was "not providing appropriate medication[;]" failed to properly prepare the children for school; and had "severely beaten" their child.

Genoa testified: (1) Kevin was aware that she had provided the medication to Kevin's mother in compliance with the TRO Genoa had against Kevin; (2) the children's schoolwork was up

to date, but "since they've been staying with Kevin Monday through Friday, I don't even know if my daughter's going to be going on to the fourth grade"; and (3) Kevin had "physically, mentally, and verbally abused [Genoa] since 2002, and he's doing it to [her] children now that [she is] not there to physically to protect them from him."

The family court apparently found Genoa's testimony credible and her testimony alone provided sufficient support for the family court's determination that Kevin's testimony and evidence would not establish a material change in circumstance warranting a modification of the custody order. The parties' exhibits corroborate Genoa's testimony that a TRO was in place at the time in question, which would require her to contact Kevin's mother and not Kevin in regard to the child's ear drops and that the children had been receiving regular medical care.

An allegation that a custodial parent was severely beating a child would constitute a material change in circumstances that would warrant revisiting custody arrangements in the best interests of the child. See Nadeau, 10 Haw. App. at 121, 861 P.2d at 759. "Exhibit A" attached to Kevin's Motion for Pose-Decree Relief alleged that modification was warranted because, "[o]ne of the minor children, the male, does not want to be with the mother, because she assaulted him, and the injuries he suffered are serious." Brower sought to admit Exhibit E, "photographs of the minor showing injuries she sustained at the hands of [Genoa]." Genoa testified however, that the bruises on the child's arm, were caused by a private detective hired by Kevin to follow Genoa to find out where she lives, works, and if she's dating anyone. Brower asserted Exhibit E was "material to the case." The family court agreed that they were "material" and further explained, "[t]he problem is that there was a failure of proof about that after I listened to both your offer of the testimony of your client and . . . [Genoa's] testimony . . . . ."

Kevin's seventh contention is that the family court erred in allowing Genoa to cross-examine him while not allowing him to cross-examine Genoa. "The appellate courts of this jurisdiction have, in other settings, applied procedural due

process protection only where an individual's rights are substantially affected." In re Doe, 99 Hawai'i 522, 534 n.18, 57 P.3d 447, 459 n.18 (2002). "A parent's right to the care, custody and control of his or her child is a fundamental liberty interest" protected by the United States Constitution and the Hawai'i Constitution. Doe v. Doe, 120 Hawai'i 149, 168, 202 P.3d 610, 629 (App. 2009) (citation and internal quotation marks omitted). "Furthermore, the Supreme Court has said that parental rights cannot be denied without an opportunity for them to be heard at a meaningful time and in a meaningful manner." In re Doe, 99 Hawai'i at 533, 57 P.3d at 458 (quoting Brokaw v. Mercer County, 235 F.3d 1000, 1020 (7th Cir. 2000) (emphasis omitted)).

We conclude the family court's failure to allow Kevin to testify or cross-examine Genoa regarding her alleged "severe" beatings of the child could have established a material change in circumstances and therefore this failure substantially affected Kevin's parental rights. See Doe, 120 Hawai'i at 154, 202 P.3d at 615 (failure to exclude inadmissible polygraph results substantially affected the outcome of the custody proceedings).

## III. CONCLUSION

For the foregoing reasons, the June 17, 2013 "Order Denying Post-Decree Relief" entered in the Family Court of the First Circuit is vacated and this case is remanded for further proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, May 14, 2014.

On the brief:

Scot Stuart Brower
for Defendant-Appellant.

Presiding Judge

Associate Judge

Associate Judge

12